UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| EDGAR GARCES ROBLES; RAMIOR SOTO ALTAMIRANO; JUAN JOSE SOTO HERNANDEZ; RODOLFO RUIZ DE LA CRUZ,<br><br>*Plaintiffs,*<br><br>v.<br><br>MARIA RAMIREZ, in her individual capacity; JOHN CIRONE, in his individual capacity; FELIPE GONZALEZ, in his individual capacity; RONNY TAYLOR, in his individual capacity; KINNEY COUNTY; BRAD COE, in his individual capacity; RICARDO "RICK" ALVARADO, in his individual capacity; VAL VERDE COUNTY; JOE FRANK MARTINEZ, in his individual capacity; and RECANA SOLUTIONS, LLC,<br><br>*Defendants.* | Civil Action No. 1:23-cv-981 |

## RECANA SOLUTIONS, LLC'S MOTION TO DISMISS

Defendant Recana Solutions, LLC ("Recana") files this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") and respectfully shows following:

### I. INTRODUCTION

1.  On August 21, 2023, Plaintiffs Edgar Garces Robles, Ramiro Soto Altamirano, Juan Jose Soto Hernandez, and Rodolfo Ruiz de la Cruz (collectively, 'Plaintiffs'), filed this lawsuit pursuant to 42 U.S.C § 1983 alleging violations of their constitutional rights under the Fourth and Fourteenth Amendments by all Defendants and a claim for negligence against Recana only. *See generally* ECF Doc. 1 ("Complaint"). Initially, Plaintiffs allege that they were arrested for trespassing, a misdemeanor offense, by Texas Department of Public Safety ("DPS") troopers in Val Verde and Kinney Counties, Texas, pursuant to Operation Lone Star ("OLS"). *Id.* at 1-4. Although Plaintiffs cast

unsubstantiated aspersions on the OLS process throughout the Complaint, "Plaintiffs do not challenge their underlying arrest and detention or the disposition of their charges." *Id.* at ¶ 6, fn1; *see also generally*. Instead, Plaintiffs allege that, despite legal entitlement to release, they were "overdetained" and subject to "overdetention" which they define as "continued detention after Texas law mandated their release." *Id.* at ¶ 6, fn. 1. Even limiting their claims to their alleged "overdetentions," Plaintiffs have failed to allege any facts that would support a claim against Recana.

## II. RELEVANT FACTUAL ALLEGATIONS

2. Plaintiffs allege that Recana is a private company that, starting around September 2021, operated the Val Verde Temporary Processing Center ("VVTPC") – described by Plaintiffs as a "makeshift jail created for the sole purpose of processing individuals arrested under OLS" – pursuant to a contract with the Texas Department of Emergency Management ("TDEM"). Complaint at ¶¶ 9, 22. More specifically, Plaintiffs allege that Recana operated the VVTPC with Defendant Ronny "Taylor from around September 2021 through November 2021 and independently thereafter." *Id.* at ¶ 22, ¶¶ 36-38. As a result, Plaintiffs claim that Recana was acting "under the color of state law." *Id.* at ¶ 22.

3. Plaintiffs allegations against Taylor are far more robust than against Recana:

> Defendant Taylor was hired by [TDEM] to help design, administer, and operate the VVTPC, including the processes involved at the VVTPC for intake and release. ... Defendant Taylor was responsible for formulating, implementing, and executing policies, customs, and practices applicable to the VVTPC. Defendant Taylor's responsibilities included ensuring that all individuals detained under the "catch and jail" program were timely released from custody. He was responsible for training and supervising VVTPC staff. He had the authority to design, implement, and change policies, customs, and practices.

*Id.* at ¶ 21. Significantly, there are no similar allegations against Recana. *See id.* at ¶ 22 and *generally*.

4. Like the allegations against Taylor, Plaintiffs allege that every other Defendant (except Recana) had the power and authority to implement and change policies, practices, and customs to ensure compliance with the Constitution and applicable laws for their respective governmental unit.

*Id.* at ¶ 13 (Martinez), ¶ 15 (Coe), ¶ 16 (Alvarado), ¶ 17 (Kinney County), ¶ 18 (Ramirez), ¶ 19 (Cirrone), ¶ 20 (Gonzalez). Again, there are no such allegations against Recana. *See id. generally.*

5. After addressing the parties, Plaintiffs outline a "Legal Background" to support their more specific factual allegations to follow. *Id.* at ¶¶ 23-27. Plaintiffs allege that there is a "clearly established right to timely release from prison" that arises under the Due Process Clause and the Fourth Amendment." *Id.* at ¶ 23 (citations omitted). Plaintiffs further allege that the sheriff of each county is the keeper of the county jail who keeps all prisoners committed to the jail subject to an order of the proper court. *Id.* at ¶ 24 (citing Tex. Loc. Gov't Code § 351.041). Plaintiffs then allege that, although the sheriff may appoint a jailer to operate the jail, "the sheriff shall continue to exercise supervision and control over the jail." *Id.* (quoting Tex. Loc. Gov't Code § 351.041).

6. In later describing the OLS procedure, Plaintiffs allege that individuals who are arrested for trespassing on privately held land along the border are transported to processing facilities like the VVTPC. *Id.* at ¶ 33. From the VVTPC, Plaintiffs allege that individuals are transferred and "held at the Briscoe Prison or the Segovia Prison for the entirety of their pretrial and/or post-conviction detention." *Id.* at ¶¶ 39, 43. Plaintiffs admit that the transfer is initiated by the county sheriff, who "formally requests that TDCJ house the individual on the sheriff's behalf and affirms that the sheriff retains authority over time calculation and release." *Id.* at ¶ 40.

7. Back in the "Legal Background," Plaintiffs more specifically allege that individuals who have fulfilled their sentence required by a judgment "shall be discharged" and the jail "shall release a defendant . . . on the day the defendant discharges the defendant's sentence." *Id.* at ¶ 26 (quoting Tex. Code Crim. Proc. Art. 43.13(a)-(c) and citing 37 Tex. Admin Code §267.6(a)). Further, Plaintiffs allege that "individuals detained under the OLS system are typically not free to leave the prisons where they are held. Instead, they are transported by TDCJ officers with a DPS escort back to VVTPC. Back at the VVTPC, individuals are typically in custody until they are transported to U.S. immigration

facilities." *Id.* at ¶ 48. Plaintiffs later make the same, albeit more inflammatory, allegation that "unlike non-OLS Val Verde and Kinney County arrestees, OLS arrestees typically are not free to leave and are transported back to the VVTPC after their release, where they are not free to leave, and they remain in a cell until they are transported to federal immigration facilities." *Id.* at ¶ 147.

8. However, Plaintiffs fail to note in the "Legal Background" – but finally cite much later in the fact allegations – that an individual may also be placed into removal proceedings under federal immigration law that allows for an additional 48 hours in custody. *Id.* at ¶ 121 (citing 8 C.F.R. § 287.7). If Immigration and Customs Enforcement ("ICE") finds probable cause, ICE may place a Form I-247A "detainer" on the individual. In such a case, even after the individual completes his or her time in state jail, the individual may be transferred to ICE custody. Under federal law, state authorities may hold persons on immigration detainers for up to 48 hours after the completion of their jail time. 8 C.F.R. § 287.7 ("Upon a determination by the Department to issue a detainer . . . such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays."). Form I-247-A includes a certification of probable cause for removability by the issuing ICE officer. *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018). Partly for that reason, the Fifth Circuit has found that such detainers do not violate the Fourth Amendment. *Id.* Plaintiffs have alleged no facts claiming that any such detainers were not valid.

9. Plaintiffs eventually allege that each Plaintiff was "overdetained" when held in custody at Brisco or Segovia Prisons after a charge against him was dismissed or his sentence fulfilled. Specifically, Plaintiffs allege that Robles was "overdetained for at least 19 days." Complaint at ¶ 61. The only contact alleged with VVTPC, allegedly operated by Recana at the time, was *after his release* from Briscoe Prison on January 29, 2023, when he was "transported for over two hours back to the VVTPC," and subsequently "transported to a federal immigration facility." *Id.* at ¶¶ 62, 64, 68.

10. Plaintiffs allege that Altamirano and Hernandez were "overdetained at least 42 days" after the charges against them were dropped by the Val Verde County Attorney. *Id.* at ¶¶ 10, 11, 69, 74. Regarding VVTPC, they initially allege that the County Attorney notified the VVTPC (*Id.* at ¶¶ 10,11), but later allege the notice was sent to Taylor specifically (*Id.* at ¶¶ 70, 75).

11. However, Plaintiffs allege that Taylor testified at a hearing on June 2, 2022, that it was "not uncommon" for him to receive emails from defense attorneys claiming that their clients were entitled to release and suffering "overdetention," and he would forward those emails to the appropriate county, and to TDCJ employees at Briscoe and Segovia Prisons. *Id.* at ¶ 53. Plaintiffs further allege, "on information and belief," that Recana regularly received these emails from Taylor, and also forwarded these emails to other Defendants. *Id.* at ¶¶ 55-56.

12. Regardless, Plaintiffs allege that Altamirano and Hernandez were both released from the Briscoe Prison on October 26, 2021, and "[t]hat same day, [both] were transported from Briscoe Prison to the VVTPC" and, from there "transported to a federal immigration facility." *Id.* at ¶¶ 70-71, 75-76.

13. Finally, Plaintiffs allege that de la Cruz was "overdetained for at least 13 days." *Id.* at ¶ 80. Specifically, they allege that de la Cruz received a sentence of 80 days, with credit for his 110 days already spent in Segovia Prison as time served. *Id.* at ¶ 81. It is alleged he was then released on January 25, 2022, when he was "transported from Segovia Prison . . . to a federal immigration facility." *Id.* at ¶ 84.

14. Plaintiffs further allege "on information and belief" that at least 80 people were "overdetained" at the same time as Plaintiffs, and that "all Defendants knew that individuals were regularly "overdetained." *Id.* at ¶¶ 51-52. However, there are no specific facts alleged to support these assertions.

15. Ultimately, regarding Recana, Plaintiffs allege "on information and belief" that in operating the VVTPC, Recana (together with Taylor) created and implemented internal policies "that resulted in release paperwork being processed days to weeks after being received." Complaint at ¶ 146. And "on information and belief, Defendants Taylor's and/or Recana's policies, practices, and/or customs were applicable to all Plaintiffs' release and caused all Plaintiffs' overdetention." *Id.* at ¶148.

### III. LEGAL STANDARD

16. However, Plaintiffs have failed to assert facts sufficient to state a claim against Recana under Section 1983 for violations of the Fourth or Fourteenth Amendments, or for negligence. Fed. R. Civ. P. 12(b)(6). Under Rule 8, a complaint must contain "a short and plain statement of the claim *showing that the pleader is entitled to relief*." (Fed. R. Civ. P. 8) (emphasis added). A plaintiff must plead "enough facts to state a claim to relief that is plausible on its fact," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. In reviewing a pleading under Rule 12(b)(6), the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.* Nor does a complaint suffice if it renders "naked assertions" devoid of further factual enhancement. *Id.* As a result, a plaintiff must allege facts – as distinguished from "labels" and "conclusions" – that give rise to a "plausible" entitlement to relief. *See id.* Assessing the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### IV. ARGUMENT

17. Plaintiffs' Complaint is a confusing conflation of allegations against all of the Defendants which could be fairly described as a "shotgun pleading." *See Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015) (identifying four types of "shotgun pleadings").

Plaintiffs incorporate by reference every paragraph into each count without distinguishing which of the incorporated alleged facts is applicable to each defendant. *See id.* (most common type of shotgun pleading). Even in the specific allegations against Recana, Plaintiffs conflate the allegations between Recana and Defendant Taylor. Complaint at ¶¶ 21-22, 70, 75, 144-148. To the extent that Plaintiffs do distinguish facts applicable to Recana, Plaintiffs' allegations fail to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).

18. Plaintiffs have alleged three causes of action against Recana, two under Section 1983 against all Defendants for deprivation of rights under the Fourteenth and Fourth Amendments (Counts 1 and 3), and a third for negligence against only Recana (Count 5). Plaintiffs have failed to assert a claim upon which relief can be granted under any of these asserted causes of action.

### A. Plaintiffs have failed to state a claim under Section 1983 for violation of the Fourth Amendment.

19. Plaintiffs have failed to assert facts sufficient to support their Section 1983 claim of violation of their Fourth Amendment rights. Plaintiffs allege that they have been subjected to an unreasonable seizure in violation of the Fourth Amendment when they were detained after their charges had been dismissed or their sentences served. Complaint at ¶¶ 165-66. They further allege that such detentions were a "widespread practice or custom." *Id.* at ¶ 167. Finally, they allege that Defendants, including Recana, took insufficient remedial steps to prevent and eliminate policies and practices that predictably caused Plaintiffs' overdetention, amounting to "deliberate indifference" to the violation of their constitutional rights. *Id.* at ¶ 169. But Plaintiffs have failed to plausibly plead that Recana was "deliberately indifferent" to the rights of Plaintiffs by implementing any policies causing "overdetention" in violation of the Fourth Amendment.

20. Section 1983 does not itself create any substantive rights, but instead was designed to provide a remedy for other federal statutory and constitutional rights. 42 U.S.C. § 1983; *Sepulvado v. Jindal*, 729 F.3d 413, 420 n.17 (5th Cir. 2013), *cert. denied*, 572 U.S. 1053 (2014). There are two essential

elements for a Section 1983 claim: (1) the conduct in question must be committed by someone acting under color of state law; and (2) the conduct must deprive the plaintiff of a right secured by the Constitution or laws of the United States. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014). Mere negligence is not enough to establish Section 1983 liability. *Daniels v. Williams*, 474 U.S. 327, 332-35 (1986).

21. Although a private contractor can be liable under Section 1983 if acting under color of state law, it also cannot be held vicariously liable or liable for respondeat superior under Section 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 691-95 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1985). In the Fifth Circuit, the facts must allege either personal involvement of an individual policymaker in the alleged violation, or the enforcement of some policy or practice resulting in constitutional deprivation. *Thompkins*, 828 F.2d at 304. Plaintiffs have not alleged any individual from Recana was personally involved.

22. Nor have Plaintiffs sufficiently alleged any policy deprived them of any constitutional rights. To establish such a claim, there must be a policy of the defendant's policymaker that caused the plaintiff to be subjected to a deprivation of a constitutional right. *Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985), *cert. denied*, 480 U.S. 916 (1987). The policy must be so deficient that the policy "itself is a repudiation of constitutional rights" and "the moving force of the constitutional violation." *Thompkins*, 828 F.2d at 170 (quoting *Grandstaff*, 767 F.2d at 169,170). Plaintiffs must plead *specific* policies that caused their "overdetention" to survive a Rule 12(b)(6) motion. *See Oliver v. Scott*, 276 F.3d 736, 742-43 (5th Cir. 2002) (plaintiff failed to allege facts identifying any specific policy that was unconstitutional, only a policy that could be applied unconstitutionally).

23. Accordingly, to recover under Section 1983, Plaintiffs must prove: (1) an official policy, (2) promulgated by a relevant policymaker who can be charged with actual or constructive knowledge, (3) that was the "moving force" behind the violation of a constitutional right. *Valle v. City*

*of Houston*, 613 F.3d 536, 541-42 (5th Cir.2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)); *see also Kennemer v. Parker County*, 2022 WL 2610239, at *1 (5th Cir. July 8, 2022) (per curiam) (applying same elements to private entity acting under color of state law). "The existence of a policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Valle*, 613 F.3d at 542. However, this "single incident exception" is extremely narrow and establishes liability only if the actor is a final policymaker. *Id.* There is no such allegation here.

24. Under the second element, the actual or constructive knowledge must be attributable to the governing body or to an official to whom that body has delegated policy-making authority. *Id.* A policy maker is more than just a decision maker. It is someone who has "the responsibility for making law or setting policy in any given area of a local government's business." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). Plaintiffs have failed as required under Section 1983 to allege that any individual at Recana was a "policymaker" who promulgated any policy that violated any of Plaintiff's constitutional rights. *See Brown v. McLane*, 2018 WL 9868737 at *5 (W.D. Tex. 2018), *aff'd*, 807 Fed. Appx. 410, 411 (5th Cir. 2020) (per curiam) (affirming dismissal of § 1983 claim against private prison operator for failing to identify relevant policymaker, policies, or confinement conditions for Fourteenth Amendment claim).

25. The third element requires "moving force" causation. A plaintiff must show the requisite degree of culpability and a direct causal link between the action and the deprivation of federal rights. *Id.* The plaintiff must show that the decision reflects "deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). Deliberate indifference is a high standard – "simple or even heightened negligence will not suffice." *Id.* (citing *Piotrowski v. City of Houston*, 237

F.3d 567, 579 (5th Cir. 2001) (quoting *Brown*, 520 U.S. at 407)). It requires the official to "disregard a known or obvious consequence of his actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

26.     Plaintiffs have failed to allege facts sufficient to establish any kind of specific policy that is "itself a repudiation of constitutional rights" and a "moving force of the constitutional violation." Plaintiffs have only alleged vaguely that Recana (and Taylor) were "responsible for creating and implementing internal policies for processing the detention and release of individuals detained under" OLS. Complaint at ¶ 145. Even then, Plaintiffs allege this responsibility was "pursuant to the procedures of Defendant Counties." *Id.* Plaintiffs also vaguely allege "on information and belief" that Recana (and Taylor) "created and implemented policies at the VVTPC that resulted in release paperwork being processed days to weeks after being received." *Id.* However, there is no specificity regarding these policies, how any such policies repudiated any constitutional rights, or how they are "the moving force of the constitutional violation."

27.     Instead, Plaintiffs merely allege that "overdetention" was the well-known result of these unspecified policies, so Defendants should have done something about it. However, such allegations are insufficient without alleging that Recana acquiesced to known misconduct. A plaintiff can establish a policy "by pointing to similar incidents that are 'sufficiently numerous' and have 'occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the defendant's] employees.'" *Robinson v. Midland County*, 80 F.4th 704, 710 (5th Cir. 2023). But knowledge of such incidents and acquiescence to the misconduct is still needed to show existence of the defendant's policy. *Id.* (citing *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020)). Plaintiffs have failed to allege facts to plausibly establish such elements of their claim.

28.     Plaintiffs apparently attempt to allege such a pattern by asserting "on information and belief" that 80 people were "overdetained" from September 2021 to January 2022 and that all

Defendants knew that individuals were regularly "overdetained" under OLS. Complaint at ¶¶ 51-52. To establish this knowledge, Plaintiffs allege that Taylor testified at a hearing that he regularly received emails from defense attorneys claiming "that their clients were entitled to release and suffering ongoing overdetention." Complaint at ¶ 53. However, Plaintiffs also plead that any "overdetention" occurred at the Briscoe or Segovia prisons, not at the VVTPC, and that Taylor testified that he normally forwarded these requests from attorneys to TDCJ employees at Briscoe and Segovia prisons. Complaint at ¶¶ 9-12, 14-15, 53. Plaintiffs even allege (on "information and belief") that Recana also forwarded such correspondence. Complaint at ¶ 55.

29. In other words, Plaintiffs have alleged that Taylor and Recana would notify the prisons when they received notice from attorneys that anyone was "overdetained." Thus, Plaintiffs have alleged that Taylor and Recana have a policy or practice that would *mitigate* "overdetention" thereby undermining Plaintiffs' own claim. Regardless, Plaintiffs have failed to allege any facts showing that Recana knew about any "overdetention" violations *and acquiesced to the misconduct*. Therefore, Plaintiffs have failed to allege facts to show any specific policy or practice promulgated by Recana was the "moving force of the constitutional violation" alleged – "overdetention."

30. In the paragraphs directed at Recana, Plaintiffs also allege that "OLS arrestees typically are not free to leave and are transported back to the VVTPC after their release, where they are not free to leave, and they remain in a cell until they are transported to federal immigration facilities." Complaint at ¶ 147. However, Plaintiffs also admit that federal law allows individuals to be detained pursuant to an immigration detainer up to an additional 48 hours (not including weekends or holidays) after release from state jail. Complaint at ¶ 121 (citing 8 C.F.R. § 287.7.). The Fifth Circuit has found such a practice does not violate the Fourth Amendment. *City of El Cenizo v. Texas*, 890 F.3d 164, 187 (5th Cir. 2018). Clearly, this allegation on its face does not itself constitute an impermissible policy that results in "overdetention" or serve as the "moving force of any constitutional violation." And

Plaintiffs have not alleged that Recana detained any of the Plaintiffs any longer than 48 hours after they were released from prison.

31. Therefore, Plaintiffs have failed to plausibly plead under Section 1983 that Recana was deliberately indifferent to Plaintiffs rights in violation of the Fourth Amendment.

### B. Plaintiffs have failed to state a claim under Section 1983 for violation of the Fourteenth Amendment.

32. Through Section 1983, Plaintiffs also purport to allege a due process violation under the Fourteenth Amendment. Plaintiffs allege that "Defendants knew or should have known that detention of a person absent pending criminal charges or an operative sentence, including beyond the expiration of a term of imprisonment, violates the Fourteenth Amendment's due process guarantee." Complaint at ¶ 151. However, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 409 U.S. 386, 395 (1989)). And it is well-established that the Fourth Amendment establishes the minimum constitutional "standards and procedures" not just for arrest, but also for "detention." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Therefore, Plaintiffs claims should be limited to the Fourth Amendment, and their claims under the Fourteenth Amendment should be dismissed, even if their Fourth Amendment claims are dismissed, as well.

### C. Plaintiffs have failed to state a claim for negligence.

33. Under Texas law, a claim for negligence requires three elements: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 535, 540-41 (citing *HSI Cedars Treatment Ctr of De Soto, Texas, Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). Plaintiffs allege that:

(1) Recana owed the duty of a jailer to timely release Plaintiffs once the legal authority to detain them had expired;

(2) Recana breached that duty by designing and implementing policies and practices that resulted in Plaintiffs' "overdetention"; and

(3) Recana's breach proximately caused Plaintiffs' loss of liberty and damages from such "overdetention."

Complaint at ¶¶ 179-185.

34. Plaintiffs' claims against Recana for negligence ultimately turn on just three underlying allegations of fact, all of which are conclusory and most of which are based only on "information and belief." Plaintiffs claim that Recana and Taylor: (1) were responsible for creating and implementing internal policies at the VVTPC for processing the detention and release of individuals arrested under the OLS program that included "on information and belief . . . reviewing and processing release paperwork and sending paperwork to the wardens of Briscoe and Segovia prisons and the Kinney and Val Verde County Sheriffs (Complaint at ¶¶ 145-46); (2) "on information and belief," Recana created and implemented policies that resulted in release paperwork being delayed days or weeks (Complaint at ¶ 146); and (3) "on information and belief," these policies caused Plaintiffs' "overdetention" (Complaint at ¶ 148). However, these are mere conclusory allegations of the elements of a negligence claim. There are no underlying facts alleged to support these conclusory allegations.

35. Initially, these "facts" alleged on "information and belief" are not really facts at all because Plaintiffs have not alleged sufficient facts on which to base such allegations. Plaintiffs' failure to allege the underlying facts against Recana establishes there is no plausible inference of liability for negligence or violation of § 1983. *See Twombly*, (dismissing antitrust conspiracy claim based on information and belief where allegation not supported by sufficient subsidiary factual allegations).

36. More specifically, unlike the allegations against the other Defendants, there is no foundational allegation that Recana *created* or *implemented* any policies or procedures, or even had the authority to create or implement any policies or procedures. This contrast is especially stark when compared to the allegations against Taylor regarding the VVTPC. *Compare* Complaint at ¶ 21 *with* ¶ 22. The only factual allegations involving creating and implementing policies and procedures for the VVTPC were asserted against Taylor, not Recana. *Id.* Taylor is alleged to have been "hired by [TDEM] to help design, administer, and operate the VVTPC, including the processes for intake and release," to have "the authority to design, implement, and change policies, customs and practices" for the VVTPC, and to have been "responsible for formulating, implementing, and executing policies, customs, and practices applicable to the VVTPC." *Id.* at ¶ 21. There are no similar allegations against Recana. *See id generally*. As a result, there are simply no facts alleged that would give rise to a plausible inference against Recana of liability for negligence.

37. Even if there were facts to establish any breach of the alleged duty owed, Plaintiffs have failed to allege any facts demonstrating that Recana, while operating the VVTPC, somehow detained any of the Plaintiffs more than the 48 hours allowed under federal law when transferring individuals released from state jail to federal immigration facilities. *See* Complaint at ¶ 121 (citing 8 C.F.R. § 287.7). As outlined above, there is no allegation that any Plaintiff was "overdetained" at the VVTPC while operated by Recana. All Plaintiffs allege detention at Briscoe or Segovia Prison, and further allege the Sheriffs retained control over the Plaintiffs. And there is no allegation that the VVTPC or Recana was involved in holding any of the Plaintiffs more than 48 hours after being released from Briscoe or Segovia Prison as allowed by federal law. The only plausible inference from the facts alleged is that Recana did not "overdetain" any of Plaintiffs and was not involved in any such "overdetention."

38. Nonetheless, Plaintiffs have alleged that Recana's policies and procedures caused Plaintiffs to be "overdetained." Complaint at ¶¶ 182, 184. Since there is no allegation the Plaintiffs were "overdetained" at the VVTPC, then the "overdetention" would need to have occurred while Plaintiffs were in the Briscoe or Segovia Prisons under the control of other Defendants. Again, there are no facts alleged demonstrating Recana's policies and procedures somehow caused any Plaintiff's "overdetention." Specifically, there are no facts alleged indicating that either Robles or de la Cruz remained detained after their release from prison because of any procedure or policy failures by Recana. Although there are more allegations regarding Altamirano and Hernandez there are still no facts alleged indicating that Recana breached any duty, or proximately caused Altamirano and Hernandez to be "overdetained."

39. Regarding Altamirano and Hernandez Plaintiffs allege that the Val Verde County Attorney sent a letter to the VVTPC – later further specified to be Taylor – informing him that the charges against Altamirano and Hernandez would not be prosecuted. Complaint at ¶¶ 10, 70 (Altamirano); ¶¶ 11, 75 (Hernandez). However, Plaintiffs further allege that Taylor had a policy and practice of forwarding such emails to the appropriate county officials and prison authorities, and that Recana also received and forwarded such emails. *Id.* ¶¶ 53-56. There is no allegation that Taylor or Recana failed to send such an email to the prison where Altamirano and Hernandez were held. In other words, there are no facts alleged that would give rise to an inference that Recana breached any duty to avoid "overdetention" or that any such breach proximately caused Plaintiffs to be "overdetained."

40. Therefore, Plaintiffs have failed to allege facts of a plausible claim against Recana for negligence, and their negligence claims should be released.

## V.  PRAYER FOR RELIEF

41. Plaintiffs' allegations against Recana for constitutional violations of the Fourth and Fourteenth under §1983 and for negligence are patently defective and should be dismissed. Recana respectfully requests that the Court dismiss Plaintiffs' claims against Recana pursuant to Fed. R. Civ. P. 12(b)(6), and for such other and further relief, at law or in equity, to which Recana may show itself to be justly entitled.

Dated: November 13, 2023

        Respectfully submitted,

        KANE RUSSELL COLEMAN LOGAN PC

        By: /s/ *Douglas C. Bracken*
            Douglas C. Bracken
            Texas State Bar No. 00783697

        901 Main Street, Suite 5200
        Dallas, Texas 75202
        Telephone: (214) 777-4200
        Facsimile: (214) 777-4299
        Email: dbracken@krcl.com

        **Attorney for Recana Solutions, LLC**

## CERTIFICATE OF SERVICE

       This is to certify that on November 13th, 2023, a true and correct copy of the foregoing has been served by ECF on all counsel of record as listed below.

| | |
|---|---|
| David A. Donatti<br>Adriana C. Piñon<br>American Civil Liberties Union of Texas<br>P.O. Box 8306<br>Houston, TX 77288<br>ddonatti@aclutx.org<br>apinon@aclutx.org | Nathan Fennell<br>Camilla Hsu<br>Texas Fair Defense Project<br>314 E. Highland Mall Blvd., #204<br>Austin, TX 78752<br>nfennell@fairdefense.org<br>chsu@fairdefense.org |
| Robert Haslam<br>Stanley Young<br>Miranda Rutherford<br>Covington & Burling LLP<br>3000 El Camino Real<br>Palo Alto, CA 94306<br>syoung@cov.com<br>rhaslam@cov.com<br>mrutherford@cov.com | Darren Teshima<br>Covington & Burling LLP<br>Salesforce Tower<br>415 Mission Street, Suite 5400<br>San Francisco, CA 94105-2533<br>dteshima@cov.com |
| Celin Carlo-Gonzalez<br>Covington & Burling LLP<br>The New York Times Building<br>600 Eight Avenue<br>New Yor, NY 10018<br>ccarlogonzalez@cov.com | Quyen Tru'o'ng<br>Covington & Burling LLP<br>One CityCenter<br>850 Tenth Street, NW<br>Washington, DC 20001<br>qtruong@cov.com |

**Attorneys for Plaintiffs**

                                                        /s/ *Douglas C. Bracken*<br>                                                        Douglas C. Bracken